# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

MONICA D. NASH,

      **Plaintiff,**

      **v.**               **Case No. 24-CV-442**

SHAWN BACICH, et al.,

      **Defendants.**

---

## ORDER

---

### 1. Procedural History

Monica Nash initiated this civil rights action on April 12, 2024. (ECF No. 1.) After a series of screenings and amended filings, the court allowed Nash's third amended complaint (ECF No. 62) to proceed against Shawn Bacich, Denita Ball, Theordore Chisholm, Mitchell Gottschalk, Ron Lagosh, Earnell Lucas, and Brent Smoot. (*See* ECF No. 60.)

Nash alleged that, in January 2020, she was the victim of an attempted murder / hit and run car crash and that the defendants mishandled the investigation of the crime, including by destroying evidence. (ECF No. 62 at 2–4.) Nash's claims include: (1) a violation of her right to seek legal redress under the First and Fourteenth Amendments;

(2) civil conspiracy under 42 U.S.C. § 1983; and (3) a claim arising under Wisconsin law for intentional infliction of emotional distress. (*See id.*)

On April 1, 2026, the defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 76.) All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 3, 26.) The court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). The motion for summary judgment is fully briefed and ready for resolution.

**2. Nash's Motions for Sur-Replies**

Nash filed a motion for leave to file a sur-reply. (ECF No. 93.) Because Nash responds to issues that the defendants necessarily raise for the first time in their reply brief (such as Nash's alleged noncompliance with the local rules), the court will grant the motion and consider Nash's sur-reply (ECF No. 93-1) in deciding the defendants' motion for summary judgment.

Nash also filed a motion for leave to file a "Rule 56-compliant" response to the defendants' proposed findings of fact. (ECF No. 94.) Nash's proposed response (ECF No. 94-1) does not overcome the deficiencies identified by the defendants because, while Nash removed citations to case law, she still has not cited any evidence supporting her position that certain facts are in dispute. *See* E.D. Wis. L.R. 56(b)(2)(B)(i) (requiring the opposing party to provide "specific references to the affidavits, declarations, parts of the record, and other supporting materials" in the case of any disagreement with a proposed

2

material fact). Therefore, the court will deny Nash's motion for leave to file an amended response to the defendants' proposed findings of fact. (ECF No. 94.)

The defendants filed a letter requesting leave to file a sur-sur-reply should the court grant either of Nash's motions. (ECF No. 95.) The court finds additional briefing unnecessary and will deny the defendants' request for leave to file a sur-sur-reply. (ECF No. 95.)

### 3. Facts

Nearly all of Nash's responses to the defendants' proposed findings of fact state that the fact is "disputed," but none of her responses cite evidence, such as affidavits, depositions, interrogatories, or other parts of the record, in support of her position that facts are in dispute. (*See* ECF No. 90.) Accordingly, Nash "fails to properly address [the defendants'] assertion[s] of fact as required by Rule 56(c)," and "the court may…consider the fact[s] undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e).

As a result, the following facts are taken largely from the defendants' proposed findings of fact. (ECF No. 78.) The court reads all reasonable inferences in favor of Nash as the non-moving party. To the extent that the court recounts any "disputed" facts as, in fact, undisputed, it reflects the court's conclusion that Nash failed to demonstrate that the proposed finding of fact is "genuinely disputed." *See* Fed. R. Civ. P. 56(c)(1)(B).

### 3.1. The Car Crash

On January 17, 2020, Nash was the victim of a hit-and-run automobile crash. (ECF No. 78, ¶ 1.) Defendant Bacich was employed by the Milwaukee County Sheriff's Office (hereinafter, the "Sheriff's Office") and acted in his official capacity as a Deputy Sheriff when he was dispatched to the scene of the crash. (*Id.*, ¶¶ 1–2.) Deputy Bacich encountered an abandoned black Infiniti with severe front-end damage and a Chevrolet with damage from impact. (*Id.*, ¶ 3.) Nash and her infant child were identified as the occupants of the Chevrolet. (*Id.*, ¶ 4.)

Deputy Sheriff Iwonna Slota was also on scene and spoke to Nash while Bacich spoke to the witnesses that remained on scene. (ECF No. 78, ¶ 5.) The witnesses described seeing two males jump out of the Infiniti and run over to the Chevrolet. (*Id.*, ¶ 6.) The witnesses stated they also went over to the Chevrolet to help Nash and her infant get out of their disabled vehicle and noticed one of the occupants of the Infiniti being "weird" and trying to "take the baby." (*Id.*, ¶ 7; *see also* Exhibit 6 at 2:49:00–2:49:18 (squad video capturing witness stating the "Mexican guy" was being "super weird").) The witnesses also stated that both occupants of the Infiniti then fled the scene in another vehicle as the witnesses were still assisting Nash and her infant. (ECF No. 78, ¶ 8.)

Bacich pulled the Department of Transportation ("DOT") photo of the registered owner of the Infiniti, Simon Castillo, and showed it to the witnesses, who identified Castillo as being on scene and as the person who was being "weird" and trying to "take

the baby." (ECF No. 78, ¶ 9.) None of the witnesses on scene observed the crash, so they could not identify Castillo as the driver of the Infiniti. (*Id.*, ¶ 10.)

### 3.2. Bacich's Investigation

Deputy Bacich declared that he never construed the witness statements regarding the baby to mean that Castillo was attempting to kidnap the baby and leave the scene with her; rather, he interpreted them to mean Castillo was emotional due to the crash and wanted to see that the baby was not harmed. (ECF No. 78, ¶ 25.) Bacich never obtained any evidence that indicated Castillo intentionally struck Nash's vehicle or attempted to murder her, nor did he obtain any evidence that Castillo knew or was familiar with Nash or her baby. (*Id.*, ¶ 26.)

Bacich obtained a link to a video from the highway DOT camera. (ECF No. 78, ¶ 13.) According to Bacich, the DOT video did not help identify who was driving the vehicle that struck Nash because the video only briefly showed the vehicles driving prior to the crash and did not capture the crash or anything thereafter. (*Id.*, ¶¶ 13–14.)

Nash told Bacich during follow-up phone calls that her hand was bruised and that her child suffered no injuries. (ECF No. 78, ¶¶ 16, 18.) Nash also reported that she could not identify who was driving the vehicle that struck her. (*Id.*, ¶ 17.)

On or around January 29, 2020, Castillo responded to Bacich's attempts to reach him and stated that his vehicle had been in the shop for a month and that he had video showing he was working at the time of the crash. (ECF No. 78, ¶ 19.) Bacich advised

Castillo that he could bring his video to court to show the Assistant District Attorney. (*Id.*, ¶ 20.)

Bacich spoke to Assistant District Attorney Emily Zimmel regarding his investigation but, due to the lack of injuries and no witnesses being able to identify who was driving the striking vehicle, she told Bacich that she did not believe a more serious case needed to be pursued. (ECF No. 78, ¶ 22.) Bacich issued traffic citations to Castillo for vehicle owner's liability, operating a motor vehicle without insurance, and operating a motor vehicle after suspension of registration. (*Id.*, ¶ 23.)

Bacich authored a crash report and an incident report. (ECF No. 78, ¶ 27 (citing ECF Nos. 79-1, 79-2).) He noted in the incident report that he placed the DOT highway video into evidence but later learned he did not do so. (*Id.*, ¶ 28.) Bacich, as a practice, did not place video into evidence for crash investigations when it did not capture the crash or provide any evidentiary value. (*Id.*, ¶ 29.) Bacich believes he did not download the video after determining it contained no evidentiary value and simply forgot to correct his report. (*Id.*, ¶ 30.) The link to the DOT video had expired by the time Bacich's error was brought to his attention more than eighteen months after the crash. (*Id.*, ¶ 31.) Bacich declared that his failure to preserve the DOT video or, alternatively, to correct his report was an oversight and not intentional. (ECF No. 79, ¶ 34.)

6

### 3.3. Nash's Inquiry with the District Attorney's Office

In or around July 2021 Nash contacted the District Attorney's Office and inquired about the lack of prosecution against the other driver in relation to her January 17, 2020, crash. (ECF No. 78, ¶ 32.) Defendant Ron Lagosh, an investigator at the District Attorney's office, spoke to Nash regarding her concerns. (*Id.*, ¶ 33.) Nash referenced a video that she alleged captured the crash (*Id.*, ¶ 35), but Lagosh could not locate any video that captured the crash among the evidence and information that the DA's office had regarding Nash's crash (*Id.*, ¶ 37). Lagosh called Nash to tell her what evidence the DA's office had in relation to her crash and that the citations issued to Castillo were dismissed because he provided affidavits from witnesses stating he was not at the scene of the crash. (*Id.*, ¶ 38.)

### 3.4. Nash's Citizen Complaint

On July 30, 2021, Nash filed a complaint with the Sheriff's Office against Deputy Bacich regarding his investigation of her crash. (ECF No. 78, ¶ 43 (citing ECF No. 87 (copy of complaint)).) Defendant Brent Smoot, who worked as a Lieutenant in the Sheriff's Office's Professional Standards Division, was assigned to investigate Nash's complaint. (*Id.*, ¶ 47.)

On August 6, 2021, Nash told Lieutenant Smoot that Castillo struck her intentionally in an attempt to kill her, approached her with his girlfriend, told her to give them her baby, and fled in another vehicle that was waiting for him. (ECF No. 78, ¶¶ 50–51 (citing Exhibit 4 (audio recording of Smoot's interview with Nash)).) Nash claimed

that, although the incident report stated there were no injuries, her baby had cuts all over her face from the accident. (*Id.*, ¶ 67.) Nash admitted to Smoot that nobody could place Castillo behind the wheel of the other automobile at the time it struck her. (*Id.*, ¶ 52.)

Nash also made several conclusory statements to Smoot regarding what she believed video evidence from the DOT contained relevant to the crash. (ECF No. 78, ¶ 53.) Nash told Smoot that Bacich was lying about the contents of the video because he knew the occupants of the other vehicle approached Nash at the scene and spoke to her, and Bacich must have known that information from observing it on the DOT video. (*Id.*, ¶ 57.) Nash also told Smoot that Bacich was able to note in his report the type of vehicle in which Castillo fled the scene because it was captured on the DOT video, but the vehicle information is not listed anywhere in the crash report or the incident report, and a dispatch report indicated that the vehicle description was unknown. (*Id.*, ¶ 63 (citing ECF No. 81-1 at 3–11, 16–23, 29 (copies of the crash, incident, and dispatch reports)).)

Nash further told Smoot that Bacich did not follow up to determine the validity of Castillo's statements that his car was in the shop despite witnesses placing Castillo at the scene. (ECF No. 78, ¶ 58.) Nash claimed the DA's office could not pursue criminal charges against Castillo because Bacich "got rid of the video." (*Id.*, ¶ 56.)

After obtaining Nash's statements, Smoot informed her that his role in the Sheriff's Office's Professional Standards Division was limited to investigating her complaint against Bacich to determine if he violated any policies or work rules. (ECF No. 78, ¶ 60.)

On August 10, 2021, Smoot interviewed Deputy Slota as part of his investigation into Nash's complaint. (ECF No. 78, ¶ 64 (citing Exhibit 7 (audio recording of Smoot's interview with Slota)).) Slota stated that she spoke to Nash on the scene of the crash and that Nash did not make any statement to her regarding anyone trying to take her child. (*Id.*, ¶ 65.) Slota confirmed that she looked at Nash's child multiple times and did not observe any injuries or cuts and said that Nash refused medical assistance. (*Id.*, ¶ 66.)

On August 12 and 13, 2021, Smoot interviewed two witnesses from the crash. (ECF No. 78, ¶¶ 69–70 (citing Exhibits 9 and 10 (audio recordings of Smoot's interviews with each witness)).) Both witnesses made statements regarding Castillo's strange behavior, but neither could confidently state that Castillo attempted to kidnap Nash's child, nor did they make any statements regarding an attempted murder. (*Id.*, ¶ 72; *see also* Exhibit #9 at 08:16–9:00 (witness stating he did not tell the deputy on scene about Castillo trying to take the baby because he thought Castillo was just trying to make sure the baby was okay); Exhibit #10 at 4:04–4:33 (second witness stating he did not think to tell the deputy on scene about Castillo acting strange).) Neither witness mentioned Castillo being on scene with his girlfriend as alleged by Nash; they stated that Castillo was with another male. (ECF No. 78, ¶ 73.) Smoot could not locate any witnesses that observed the crash or any other witnesses that remained on scene after the crash. (*Id.*, ¶ 71.) Based on Bacich's squad video and the witness statements, Smoot ascertained that Bacich obtained the

information regarding Castillo's odd behavior from the witnesses on scene and not from DOT video as alleged by Nash. (*Id.*, ¶ 74.)

On August 18, 2021, Lieutenant Smoot interviewed Assistant District Attorney Michael Staskunas regarding his contact with Nash and his review of the case. (ECF No. 78, ¶ 75 (citing Exhibit 13 (audio recording of Smoot's interview with Staskunas)).) Staskunas agreed with Assistant District Attorney Zimmel's prior assessment that, because the operator of the striking vehicle could not be identified, they could not charge anyone with "a criminal hit and run." (*Id.*, ¶ 76; *see also* Ex. 13 at 03:20–03:45.)

On or around September 1, 2021, Deputy Bacich received notice of an investigation from the Sheriff's Office's Professional Standards Division that was initiated due to the complaint filed against him by Nash. (ECF No. 78, ¶ 80.) Bacich was then interviewed by Smoot, with the assistance of Lieutenant Mitchell Gottschalk, on the same date. (*Id.* (citing Exhibit 15 (audio recording of Smoot and Gottschalk's interview with Bacich)).) Gottschalk is another named defendant in this case; although he was working as an investigator in the Sheriff's Office's Professional Standards Division at the time Nash filed her complaint, he was not assigned to investigate her complaint and did not participate in any of the other witness interviews. (*Id.*, ¶ 78; *see also* ECF No. 82, ¶ 10 (Gottschalk's declaration, stating that "[t]he participation of two lieutenants in an interview of the subject of a [Professional Standards Division] investigation was encouraged and occurred frequently to help ensure nothing was missed or overlooked").)

Both Bacich and Slota stated in their interviews that they did not, as a general practice, place into evidence for crash investigations video that they determined did not contain any evidentiary value. (ECF No. 78, ¶ 81.) Smoot was unable to recover the DOT video to confirm whether it indeed had any evidentiary value to the crash. (*Id.*, ¶ 82.) Although Smoot concluded that Bacich made missteps related to his report writing and evidence preservation, he did not obtain any evidence that indicated Bacich did so intentionally to conceal or destroy evidence. (*Id.*, ¶ 83.)

On September 10, 2021, Smoot completed his investigation of Bacich and recommended the Sheriff review it for disciplinary decisions regarding work rule violations related to competency and substandard or careless job performance. (ECF No. 78, ¶ 87 (citing ECF Nos. 81-3, 81-4 (copies of the investigative summary and investigative brief)).) On September 13, 2021, then-Chief Deputy Denita Ball (a defendant in this case) reviewed and signed Smoot's investigative summary. (*Id.*, ¶ 88.) On October 14, 2021, then-Sheriff Earnell Lucas (another defendant in this case) imposed a five-day suspension and ordered retraining for Bacich. (*Id.*, ¶ 90.)

On October 21, 2021, Smoot informed Nash that his investigation had concluded and that Bacich had been written up and disciplined for rule violations in connection with his investigation of her crash. (ECF No. 78, ¶ 91 (citing Exhibit 18 (audio recording of Nash and Smoot's conversation)).) Nash continued to allege that crimes were committed against her that were not being investigated. (*Id.*, ¶ 92.) Smoot informed Nash that he

spoke with all witnesses that he could locate and reviewed all the available evidence, but none of the evidence corroborated Nash's allegations of attempted murder and he did not believe sufficient evidence existed to further investigate her allegations of attempted kidnapping. (*Id.*, ¶ 93.)

### 3.5. Guard Rail Billing

On or around December 28, 2021, the Sheriff's Office received a letter from Nash that contained a copy of a DOT invoice billing her for guard rail damage from her January 17, 2020, crash. (ECF No. 78, ¶ 95.) Mary Yu, an office supervisor for the Sheriff's Office, contacted DOT Damage Claims on Nash's behalf and informed them that Nash was the victim of the crash. (*Id.*, ¶ 96.) Realizing they made an error in billing Nash, the DOT removed her from the invoice. (*Id.*, ¶ 97.)

On January 11, 2022, Lieutenant Gottschalk informed Nash that the charge for the guard rail damage was removed. (ECF No. 78, ¶ 99 (citing Exhibit 19 (audio recording of Gottschalk and Nash's conversation)).) Gottschalk attempted to provide Nash with the DOT contact information after Nash asked for confirmation in writing. (*Id.*) However, Nash hung up after accusing the Sheriff's Office of destroying evidence and "covering it up." (*Id.*, ¶ 100.)

On January 12, 2022, the Sheriff's Office received a voicemail message from Nash asking to speak to then-Sheriff Lucas or a captain or lieutenant in internal affairs. (ECF No. 78, ¶ 102.) Gottschalk returned Nash's call on the same date and again tried to explain

that the DOT made an error in billing her and had removed her from the invoice. (*Id.*, ¶ 103 (citing Exhibit 21 (audio recording of Gottschalk and Nash's conversation)).) Nash accused the Sheriff's Office of contacting the DOT on her behalf because "it further proves" her corruption allegations and that the DOT would not have charged her if Bacich "would have did what he was supposed to have done." (*Id.*, ¶ 104.) Nash also accused the Sheriff's Office of not investigating her complaint. (*Id.*, ¶ 105.) Gottschalk told Nash that the Sheriff's Office indeed investigated her complaint, that the matter was closed, and that the DA's office determined "there was no crime." (*Id.*, ¶ 106.)

### 3.6. Nash's Contact with Milwaukee County Officials

On January 14, 2022, Nash emailed and called the Milwaukee County Executive's Office stating that (1) she fears for her safety because she is being stalked and harassed by members of Sheriff's Office, (2) nothing was done after she made a case with internal affairs, (3) she has evidence she would like to provide, and (4) she would like to file a formal complaint against the Sheriff's Office and the DA's office for not investigating "a hit and run vehicle accident/attempted murder." (ECF No. 78, ¶ 109 (citing ECF No. 84-1 (copy of Nash's email)).)

Nash's January 14, 2022, email also alleged that various employees of the Milwaukee Police Department hired Castillo to kill her as retaliation for a complaint she filed against them with the Equal Employment Opportunity Commission, that Bacich destroyed evidence in connection with the crash and tried to intimidate her, that the

Sheriff's Office did not investigate the matter and disregarded witness statements, that she had photos of investigators from the DA's office stalking her after she filed a complaint with the Sheriff's Office, and that because the case was not referred to the DA's office she is left with paying over $6,000 in guard rail damage. (ECF No. 78, ¶ 112.)

The County Executive's Office forwarded Nash's email to the Sheriff's Office's then-Chief of Staff Theodore Chisholm (a defendant in this case) and then-Chief Corporation Counsel Margaret Daun (another defendant in this case). (ECF No. 78, ¶ 110.)

On January 19, 2022, Daun called Nash to better understand her allegations and concerns. (ECF No. 78, ¶ 114.) Daun agreed to forward Nash's requests to the Sheriff's Office regarding the investigation, attempt to obtain documentation from the DOT regarding her release from the guardrail charges, and notify her if any independent investigation into her allegations would occur. (*Id.*, ¶ 117.) Daun received documentation regarding the guardrail billing error and sent it to Nash later that same day. (*Id.*, ¶ 118 (citing ECF No. 85-2 (copy of Daun's email to Nash dated 01/19/2022)).)

Also on January 19, 2022, multiple Milwaukee County Board members emailed Chisholm regarding emails they received from Nash in which she requested a full investigation regarding corruption within the Sheriff's Office and the DA's office and alleged she was the victim of a "felony attempted murder" that was being covered up.

(ECF No. 78, ¶ 119 (citing ECF Nos. 84-2, 84-4 (copies of Nash's email being forwarded to Chisholm)).)

On January 20, 2022, Chisholm sent a summary based on his review of the Sheriff's Office records to the Milwaukee County Board Supervisors to provide background information regarding Nash and her January 19, 2022, email. (ECF No. 78, ¶ 120 (citing ECF No. 84-5 (copy of Chisholm's email summary)).) Chisholm found no evidence indicating anyone was trying to murder Nash or that anyone, including any defendant in this case, was involved in a conspiracy to conceal details of any crime. (*Id.*, ¶ 121.)

Due to the serious allegations of interagency conspiracy and corruption, Chisholm decided it would be more appropriate for an outside agency to investigate Nash's claims, so he contacted the United States Attorney's Office ("USAO") for the Eastern District of Wisconsin on January 19, 2022, and requested an independent review of the matter. (ECF No. 78, ¶ 122 (citing ECF No. 84-3 (copy of Chisholm's email to the USAO)).) Daun was included on the email correspondence between Chisholm and the USAO, and she emailed Nash the next day to notify her that the USAO would be investigating her allegations at the request of the Sheriff's Office. (*Id.*, ¶ 124 (citing ECF No. 85-4 (Daun's email to Nash)).)

On January 23, 2022, Chisholm received another forwarded email from County Board Supervisor Shawn Rolland that was sent by Nash on January 22, 2022, which attached photos and alleged that the people in the photos were showing up at her home,

15

following her, and that she was almost "ran off the road." (ECF No. 78, ¶ 126 (citing ECF No. 84-6 (copy of Rolland's email forwarding Nash's email)).) Chisholm responded to Supervisor Rolland, stating he did not think it was appropriate for the Sheriff's Office to serve as the agency investigating Nash's additional claims and encouraged the referral of further claims to be sent to the USAO. (*Id.*) Chisholm also forwarded the latest email from Nash to the USAO. (*Id.*)

On January 27, 2022, the Sheriff's Office sent the investigative file from Nash's complaint against Deputy Bacich to Assistant U.S. Attorney Christopher Ladwig, who was assigned to review Nash's allegations of conspiracy and misconduct. (ECF No. 78, ¶ 128 (citing ECF No. 84-7 (copy of email)).)

On February 23, 2022, the USAO sent Nash a letter stating that its office independently reviewed the circumstances and available facts related to her allegations against Bacich and other law enforcement officers and concluded there was insufficient evidence to open any further investigation or federal prosecution. (ECF No. 78, ¶ 131 (citing ECF No. 86-1 (copy of letter)).)

None of the defendants in this action knew Castillo or Nash, nor were they aware of any relationships either of them may have had with members of any agency. (ECF No. 78, ¶ 133.) All of the defendants declared that they never destroyed any evidence from the crash or its investigation. (ECF No. 78, ¶ 135.)

According to publicly available court records, Nash has never attempted to pursue a claim against Castillo or any other person she believes may have been involved in her hit-and-run crash, nor has she ever asked a state court to consider a John Doe proceeding. (ECF No. 78, ¶ 136.) Nash has not produced any reports from medical doctors, psychologists, psychiatrists, or sleep therapists, or any evidence that she needed to relocate, to support her claims of emotional distress. (*Id.*, ¶ 137.)

**4. Summary Judgement Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)).

Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

**5. Analysis**

The defendants contend that they are entitled to judgment as a matter of law on all three of Nash's claims. (*See* ECF No. 77.)

**5.1. First and Fourteenth Amendment Right to Seek Legal Redress**

The First and Fourteenth Amendments protect "[t]he right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact*." Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) (citing *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983)). "To prove a violation of this right, [Nash] must show that (1) state action frustrated [her] efforts to pursue a non-frivolous claim, and (2) [she] suffered an actual concrete injury as a result." *LaPorta v. City of Chi.*, 102 F. Supp. 3d 1014, 1023 (N.D. Ill. 2015) (citing *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000)).

The defendants argue that Nash's judicial access claim must fail because no reasonable jury could find that any defendant unconstitutionally denied her access to legal redress. (ECF No. 77 at 5–10.) They contend that Nash's complaint amounts to dissatisfaction with the police investigation but that there is no constitutional right to a satisfactory investigation. (*See id.*)

The Seventh Circuit has indeed explained that there is no "constitutional right to have the police investigate [anyone's] case at all, still less to do so to [anyone's] level of satisfaction." *Rossi v. City of Chi.*, 790 F.3d 729, 735 (7th Cir. 2015) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Because "mere inactivity

by police does not give rise to a constitutional claim," "the operative question is not whether [the plaintiff's] case would have been better had the police conducted a worthy investigation, but whether their failure to do so limited [the plaintiff's] ability to obtain legal redress to such degree that it constituted a denial of judicial access." *Id.*

Nash responds that "[g]overnment officials violate the First Amendment when their actions hinder a plaintiff's ability to pursue legal claims." (ECF No. 89 at 4 (citing *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)).) She contends that "[f]abrication of evidence and bad-faith investigative conduct violate due process" under the Fourteenth Amendment. (*Id.* (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)).) Nash asserts that the defendants' "failure to preserve evidence, misrepresentation of facts, and fabrication of investigative conclusions impaired [her] ability to pursue a viable legal claim." (ECF No. 89 at 4.)

Nash points to no consequential evidence that any defendant fabricated investigatory conclusions. (*See generally* ECF Nos. 89, 90.) She claims that an attorney from the U.S. Attorney's Office told her that "he had no knowledge of any complaints made by [Nash] regarding the Milwaukee County Sheriff's Office and that his review was limited solely to the unrelated vehicle crash in which [Nash] was involved." (ECF No. 89 at 2.) Nash claims this alleged conversation "undermines [the defendants'] characterization of a federal investigation into their alleged misconduct" and would allow a jury to conclude that the defendants "fabricated or materially exaggerated the existence and scope of such

19

an investigation in an effort to conceal unlawful conduct and evade liability." (*Id.*) But the letter sent from the U.S. Attorney's Office specifically states that the office reviewed Nash's allegations about Deputy Bacich's and other officers' misconduct. (ECF No. 86-1.)

Nash does not argue that any defendant, other than Bacich, failed to preserve evidence or misrepresented facts. (ECF No. 89 at 3.) The record reflects that Bacich stated in his incident report that the video was preserved even though it had not been. (*See, e.g.*, ECF No. 79, ¶¶ 32–34, 39 (Bacich declaration acknowledging his errors and related discipline); ECF No. 81, ¶ 48 (Smoot declaration describing investigative conclusions).)

Although Nash's case against the other driver would have been stronger had the DOT video been preserved *and* captured the driver's identity (which Bacich said it did not), Nash has not demonstrated how Bacich impeded her ability to pursue a *viable* legal claim. Nash was present at the scene and could pursue damages based on her firsthand knowledge. *See Thompson v. Boggs*, 33 F.3d 847, 852 (7th Cir. 1994) (finding that the plaintiff "was not deprived of adequate, effective, or meaningful access to the courts because he was personally involved in the incident and thus had firsthand knowledge of all the facts and circumstances surrounding his arrest"). At least two disinterested witnesses could also testify to their experiences on the day of Nash's crash and apparently dispute Castillo's claim that he was not present at the scene. Therefore, Nash could pursue a viable claim against Castillo related to the crash without the DOT video.

Even if Bacich preserved the DOT video, there is no evidence to suggest that it would benefit Nash. Bacich provided a declaration stating that the DOT video did not capture the crash or the driver's identity. (ECF No. 79, ¶¶ 20–21.) Nash has offered nothing more than speculation to challenge Bacich's credibility. (*See generally* ECF Nos. 89, 90.) Speculation is insufficient to generate a genuine dispute of material fact and defeat summary judgment. *See Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 823 (7th Cir. 2019) ("[W]hen challenges to witness credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper.") (emphasis in original) (citation omitted); *see also Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022) ("While it is true that courts should generally not make credibility determinations at the summary judgment stage, a nonmoving party…cannot rest 'upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence.'") (citations omitted).

Moreover, individuals have the right to be free "from police interference with access to court, such that an officer's *intentional* concealment of 'the true facts about a crime may be actionable as a deprivation of constitutional rights under [42 U.S.C.] § 1983.'" *Harer v. Casey*, 962 F.3d 299, 306 (7th Cir. 2020) (emphasis added) (quoting *Rossi*, 790 F.3d at 734). Nash has presented no evidence that Bacich acted intentionally or actually concealed any facts about a crime. (*See generally* ECF Nos. 89, 90.)

Nash has not identified a genuine dispute of material fact. The defendants have established that they are entitled to judgment as a matter of law, and the court will grant their motion.

### 5.2. Equal Protection under the Fourteenth Amendment

In response to the defendants' summary judgment motion Nash states that the defendants violated her right to equal protection under the Fourteenth Amendment. (ECF No. 89 at 4.) She claims the defendants engaged in "selective enforcement" and "treated [her] differently because she is a Black woman and the perpetrator was a white male." (*Id.*) But she did not present an equal protection claim, legally or factually, in her third amended complaint. (*See generally* ECF No. 62; *see also* ECF No. 60 at 2 (court's screening order observing that Nash abandoned the equal protection claim previously raised).)

The Seventh Circuit has instructed that "a district court retains discretion to treat new claims presented for the first time in briefing as a constructive motion to amend," although "[i]t will rarely be appropriate to do so." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489–90 (7th Cir. 2023) (observing that "only when the general principles governing amendment of a complaint are satisfied should constructive amendment be permitted"). "Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely when justice so requires, but leave may be denied on account of undue delay, prejudice,

bad faith or dilatory motives, futility, or judicial economy." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 607 (7th Cir. 2024).

A state actor violates the Equal Protection Clause if he, "with a nefarious discriminatory purpose," discriminates against a person based on her "membership in a definable class." *Doe v. Galster*, 768 F.3d 611, 622 (7th Cir. 2014) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). To prevail on such a claim the plaintiff must be able to show that the defendant "acted either intentionally or with deliberate indifference." *Id.* (citations omitted).

Nash does not offer any reason for her delay in raising an equal protection claim, nor does she point to any evidence in support of such a claim. (*See generally* ECF No. 89.) Therefore, undue delay and futility weigh against amending the complaint to add this claim.

### 5.3. Civil Conspiracy

Nash alleged in her complaint that the defendants engaged in a conspiracy to deprive her of her constitutional due process rights while acting under color of state law. (ECF No. 62 at 2.)

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.'" *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citation omitted). "To establish conspiracy liability in a § 1983 claim, [Nash] must show that (1) the individuals reached an

agreement to deprive [her] of [her] constitutional rights, and (2) overt acts in furtherance actually deprived [her] of those rights." *Id.*

The court already determined that the defendants did not deprive Nash of her due process rights. Because an actual deprivation is the second element necessary to establish a conspiracy claim, the defendants have demonstrated they are entitled to judgment as a matter of law on this claim.

### 5.4. Intentional Infliction of Emotional Distress

The final claim in Nash's complaint alleges that the defendants caused her intentional infliction of emotional distress. (ECF No. 62 at 2.)

A claim for intentional infliction of emotional distress under Wisconsin law requires a showing of four elements: "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." *Rabideau v. City of Racine*, 627 N.W.2d 795, ¶ 33 (Wis. 2001) (citing *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (Wis. 1963) and Wis. Civil Jury Instruction 2725). It is not enough that a defendant intentionally engaged in conduct that caused emotional distress; the defendant must have engaged in the conduct for the purpose of causing emotional distress. *Rabideau v. City of Racine*, 627 N.W.2d 795, 803 (Wis. 2001).

Even if the shortcomings in Deputy Bacich's investigation caused Nash emotional distress, the record contains no indication that Bacich acted with the intention of causing Nash emotional distress. (*See* ECF No. 79, ¶ 48 (Bacich declaration stating he "did not intentionally fail to preserve the DOT video or make errors in [his] report to conceal any facts related to Ms. Nash's crash or any criminal act, or to thwart her right to seek legal redress against the driver"); ECF No. 81, ¶ 48 (Smoot declaration stating he "did not obtain any evidence that indicated [Bacich] [acted] intentionally to conceal or destroy evidence"). Further, Nash has not argued that any other defendant engaged in extreme and outrageous conduct with the intention of causing her emotional distress. (*See generally* ECF Nos. 89, 90.)

Accordingly, the defendants are entitled to judgment as a matter of law on Nash's state-law claim for emotional distress.

**6. Conclusion**

**IT IS THEREFORE ORDERED** that Nash's motion for leave to file a sur-reply (ECF No. 93) is **GRANTED.**

**IT IS FURTHER ORDERED** that Nash's motion to file an amended response to the defendants' proposed findings of facts (ECF No. 94) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' request for a sur-sur-reply (ECF No. 95) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment

(ECF No. 76) is **GRANTED**. This action is dismissed with prejudice. The Clerk of Court

shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of May, 2026.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

26